Ellswokth, J.
There are two principal questions in this case : 1st. Is the bond in suit an annual bond ? and, [ *890 ] if it is, *2d. Are the' sureties in it liable for the ■ default of the principal, which occurred some five years after its date and delivery ? •
We entertain no doubt upon either of these questions. The authorities are all one way, and, although they may not express the -popular opinion, they appear to us to declare the law correctly, and to rest on principles which can not be controverted.
The bond is, in its language,'a mere general bond, and as such is an annual bond, if it was given for an annual officer. Was John' W. Seymour such an officer? The Hartford County Savings Association was formed - under the statute law of the state, according to its articles, and hence we must look’to these articles to learn whether the office of treasurer, (which !is the office Seymour filled,) was an annual office, one which expired at the end of the year by its own limitation, or a continuous onej which, when once filled would be determined only by some further action of the officer or of the company.
These articles, after giving the company. a-corporate name, and prescribing the kind of business to be done, the number of the shares of capital stock, and the mode in which'they shall be transferred, proceed to provide as to its officers as follows:—■ “ Said association at its first and each annual meeting shall elect from its number not less than fifteen directors,; who. shall *319 have the care and management of the property, affairs and business of said association. The directors shall choose from their, number a president and vice-president, and shall appoint a secretary and treasurer, and such other officers as may be deemed necessary. The said officers shall continue in office until the next annual meeting and, until others are elected in their stead.” All these officers are, we think, strictly annual officers and nothing more.
The directors are to be chosen annually, they are to choose the president and vice-president from their number, and the secretary and treasurer at large. If this were all, no one could doubt that all these appointments were intended and required to be annual, by a fair and just construction of the *articles of association.. So the company themselves [ *391 ] have understood them, and have uniformly made the appointments annually in accordance with that understanding. But it is said that.the words “until others are elected in their stead,” ought to be construed as admitting of an indefinite continuance in office. These words, whatever be their effect, are equally applicable to all the officers named in the paragraph—■ president, vice-president, directors, secretary and treasurer. Now can it be possible that all these offices are to be regarded as continuous ones ? Can it be said that such is the fair meaning of the article, and that it does not contemplate annual appointments or elections ? But if this construction were allowable it would be of no avail in.this instance, because the company have from the first made annual elections. No such construction is however allowable. These words must be .taken in connection with what precedes them in the same clause; and, so taken, it is obvious that they mean only that the annual officers named may hold over until their successors, whether themselves or other persons, are ready to enter upon their duties. To hold otherwise, and that these officers are not to be annually chosen, would be to strike out all that is said about annual elections ; whereas, both provisions, may, and should be, retained and construed harmoniously, if it can be consistently done. Ch. J. Shaw says, in Chelmsford Company v. Demarest, 7 Gray, 1, that the law having directed that such officers shall be chosen annually, or at the annual meeting, it assumes and presupposes that such direction will .be.complied with, and then the words in question must be construed to mean, until the new incumbent can be conveniently qualified and in a.manner compatible with existing engagements.” An appointment of officers until the next annual meeting, and until others are chosen in their stead, is. an annual appointment. Curling v. Chalklen, 3 Maule &, *320 Selw., 502. Dedham Bank v. Chickering, 3 Pick., 335. A provision for an extension of an official term until a successor is appointed, is well understood and intended to be a precaution against a vacancy or lapse in the office, not to create [ *392 ] an unlimited tenure. Commissioners v. *Greenwood, 1 Dessau., 452. Chelmsford Company v. Demarest, 7 Gray, 1. So a second appointment is a revocation of the first, and puts an end to it. United States v. Kirkpatrick, 9 Wheat., 720. The word “ others” does not necessarily mean different persons. Commissioners v. Greenwood, United States v. Kirkpatrick, supra.
We must not be understood as laying down the law, that if an incorporated company neglects or omits to appoint its annual officers according to the requirements of its charter, and the old officers hold over, and go on with the regular business of the company, as if there had been a new election, therefore these •officers are intruders, or strangers devoid of authority, and by their acts do not bind their respective companies, or that the company ceases any longer to exist by reason of such omission. The incumbents are officers de .facto, and that is sufficient to bind their principals in the regular business of the company. So we held in Evarts v. Killingworth Manufacturing Co., 20 Conn., 447. The same is laid down as the law in all the books. Hastings v. Blue Hill Turnpike Corporation, 9 Pick., 80. Chelmsford Company v. Demarest, 7 Gray, 1.
If, to the words we have commented on, the further word “ qualified ” had been added, so that it would read “ elected and qualified,” and the articles of the company had declared that no person elected should be considered qualified until a satisfactory bond was given, another and different question might have arisen; but there is no such word here. A new election, or a re-election, is alone required by the articles.
The next question is, are these suretiés liable on this bond for a default of the principal which took place several years after the date of the bond, and after the expiration of the year of the incumbent’s election. Here, likewise, there is no room for doubt as to what the law is. It has been uniformly held, in like cases, that the sureties are not liable.
The case of Arlington v. Merrick, in 2 Saund., 404, is the oldest one to be found on this point, and it has uniformly been approved and followed, in England and in the courts of this country, as containing the law, though many ingen- [ *393 ] ious *efforts have been made by counsel, and sometimes before willing judges, to extend the obligation of official bonds. In that case the language of the bond was gen *321 eral, and the principal held over just as if he had been re-elected; in this respect coming short of the case now on trial, for here there was a re-election. The language of the bond was, “ during all the lime that Jenkins shall continue post-master,” and yet the surety was held not liable. In Kitson v. Julian, (30 Eng. L. & Eq., 326,) which is one of the latest and best considered cases in the English courts, reviewing all the rest, the words of the bond were, “ so long as he (the principal) shall continue to hold the said office or employment,” but the court decided, notwithstanding the generality of the language of the bond, that the obligation continued only for the term of the first appointment, and that whether the duration of the office was mentioned in the bond or not could make no difference, since, if it was not, it might be shown by evidence aliunde.
It is a legal inference that a bond, making use of general language, is given with reference to the specific election then made, and to no other. Ld. Campbell, Ch. J., in that case says : “ According to the natural and grammatical construction of the bond, I should think that the liability of the surety continued after the expiration of the year for which the principal was appointed, and such no doubt was the intention of the parties. But there is a series of decisions which have put a limited construction upon language of this kind, and have decided that the liability of the surety shall only continue for the time during which the principal is bound. When there is a recital in the bond of the limited time for which the principal is appointed, there are a number of express decisions that the surety is no longer liable, and they seem to show that, where there is no such recital, it may be stated by averment in pleading what the limitation in the appointment was.” Ld. Campbell also remarked that he did not like to introduce any nice distinctions between cases where there was a statement of the term of the office in the bond and cases where there was not. Wightman, J., in the same case says: “ Whatever might have been my opinion *if the question had [ *394 ] arisen for the first time, I think, after the cases that have been referred to, the point must be considered as settled. It is clearly decided that, though the terms of the condition of a bond like the present be general, they may be restrained to the period for which the particular office existed.” Erie and Crampton, Js., agreed with the chief justice. The American cases cited at the bar, and others to the same effect, may be found referred to in Angelí and Ames on Corporations, § 322. They are very numerous.
The only authorities read to us by the plaintiffs’ counsel to- *322 show that the law is not as expressed in the cases we have noticed, and that a bond for an annual office may be extended beyond the first year of the appointment, are the cases of Exeter Bank v. Rogers, (7 N. Hamp., 21,) and of Amherst Bank v. Root, (2 Met., 523.) The former is the case of a bond given to secure the fidelity of a cashier of a bank, and the question was whether it covered his conduct while continued in office under a renewed charter of the bank. We are by no means satisfied that the court meant to depart from the acknowledged law of the cases, since they admit the rule to be in general as we have stated it, and place their decision upon certain peculiar circumstances which they regard as distinguishing the case from others. In the Massachusetts case, we are quite confident that the court do not controvert the law as we understand it and as wo have stated it. They place their decision on a peculiar statute of their state, which declares that officers shall continue in their respective offices until they are “ removed,” which does away with the distinction between annual offices and those which are unlimited as to duration. The common law rule they expressly admit and approve. When these cases were read to us on the trial we thought they were susceptible of the explanation now given, and we are happy to be able to add that that explanation has been fully given by that very court, in the recent case, just come to hand, of Chelmsford, Company v. Demarest, (7 Gray, 1.) This is the marginal note of the case : “ The sureties on the bond of the treasurer of a manufacturing company, who, by the revised statutes, ch. 38, § 4, is [ *395 ] to be chosen annually and hold his office until another is chosen and qualified in his stead, are bound only for the year for which he was chosen, and for such further time as is reasonably sufficient for the election and qualification of his successor, and no longer, although the corporation fail to elect at their next annual meeting.”
Much was said on the trial of the official relation subsisting between these sureties and the company, during and after the first appointment of their principal to the office of treasurer, such as being directors, some of them vice-presidents and special financial agents,- generally present at the meetings of the board of directors and active in certain branches of the company’s business, and especially that, after the treasurer had absconded, they admitted that they were liable on the bond for his default, and engaged verbally to pay the bond. It will be noticed, if it be important, that at this time the sureties had not seen the bond since' they signed it, and had no recollection as to how it was expressed in the particular now under consideration.
*323 We do not attach any importance to these opinions, declarations, or acts of the sureties, nor to any of the circumstances mentioned connecting them with the business of the company. The sureties were mistaken in their view of the law of the case ; they did not intend to enter into any new obligation to the company, nor did they in fact do so ; nor did they mean to acknowledge any as already existing, if there was none in fact. If they can be affected at all, it must be by something operating as an estoppel in pais, but there is here no ground for an equitable estoppel. The sureties have neither said or done anything which should deprive them of their legal rights, or which has placed the company in any different position from what it would have been in, had they been entirely silent and inactive. No party is estopped by an admission made in ignorance of his rights. Thrall v. Lathrop, 30 Verm., 307.
Nor can Mr. Dunham in this way be visited with the consequences of any supposed want of vigilance and attention in the discharge of his duties as vice-president or financial *'agent. Perhaps he was too confiding in Seymour, as [ *396 ] it appears all the directors were, though at the time few men in this community had a better reputation for probity than he. Be that as it may, an action on this bond presents no such case for our consideration.
In conclusion we need hardly remark, that an official bond may be so drawn, in the case of an officer who is to be annually appointed, as to guarantee his fidelity while he remains in office under the first or successive appointments, but the language must be clear and definite, or the common law rule will control, and courts will treat it as an annual bond.
We advise judgment for the defendants.
In this opinion the other judges concurred ; except Storks, C. J., who, being disqualified by interest, did not sit.
Judgment for defendants advised.