Peaesojí, J.
 

 The parties, being tenants in common of valuable real estate, agreed upon a division, and executed a covenant to submit the valuation of the respective parts to the arbitration of Mr. Britton and Mr. Smith; but it was agreed, that either party might refuse to abide by the award, in which event the party refusing was to pay to the other the sum of $1000, which sum was declared to be
 
 stipulated damages,
 
 and not a penalty. The arbitrators made their award, and the defendants refused to abide by it; whereupon the plaintiff brings this action to recover the $1000.
 

 In the covenant of submission, there is this clause: "The valuation to be made upon such examinations and surveys as the referees may think proper, of which they shall be the sole and exclusive judges.”
 

 
 *492
 
 The defendants, under the plea of “no award,” offered to prove, that Smith did not go upon the land or make any examination of the premises ; and insisted, that the award had not been made according to the terms of the submission. They also offered to prove, that the plaintiff had interfered with one of the arbitrators, and exerted undue influence, over him ; and insisted, that the award was not valid, because it had been procured by unfairness on the part of the plaintiff. They also offered to prove, that, after the submission, Mr. Britton had become addicted to intemperance to such an extent as to impair his mind
 
 -r
 
 and insisted, that, for this reason, the award was not valid and was void.
 

 His Honor rejected the evidence as immaterial, and not tending to establish the issue. To this the defendants excepted.
 

 There is no error. By the terms of the submission, the arbitrators were to make such examination and surveys, as they might think proper ; and of this they were to be the exclusive judges. Language could not be more definite ; and if the arbitrators thought proper to have the examination and surveys made by one of them alone, the other depending upon his own prior knowledge of the premises, and the report of his fellow, as to the number of acres in the different tracts and the quantity of river bottom, second bottom, swash and upland, in the several tracts, the parties had no right to complain, because the abitrators in so doing acted within the terms of the agreement. There is then
 
 “an award”
 
 — the decision of judges
 
 of the
 
 parties’ own choosing, acting within their jurisdiction (so to call it) on the terms of the submission.
 

 The next question is, can this (judgment or) award be impeached in a
 
 Court of Law,
 
 by proving, that it was procured tobe made unfairly and by the exertion of un* due influence ? It is clearly settled to the contrary:—
 
 *493
 
 Upon the same principle, that, under the plea of
 
 “nonest
 
 factum,” if the execution of the deed is proven, it cannot be avoided in a Court of law by proof, that it was
 
 procured to be
 
 executed by means of falsehood and misrepresentation or other fraud. There must be fraud
 
 in the “fac-tum,”
 
 as by substituting one paper instead of the one intended
 
 to
 
 bo executed, so as to show, that the party did not intend to execute the paper he was thus made to sign, seal and deliver as his deed.
 

 We also concur with his Honor on the third question, if it be proven, that at the time an arbitrator made his award, he was so drunk as not to know what he was doing, or if his intemperance had been carried to such an extent as to reduce him to a state of
 
 fatuity,
 
 so that he had no mind; it may be, that a Court of law would pronounce a paper, signed by him and purporting to be his award, to be in fact no award, for the want of a legai capacity to make one; in the same way, that a paper, signed, sealed and delivered under such circumstances, is
 
 not the deed
 
 of the party.
 

 The defendants did not pretend to be able to make any such proof, but offered merely to show, that his “mind was impaired” — was not as strong and vigorous as it had been. This might have given either party a right to insist upon substituting another arbitrator in his stead, but it ought not to have been heard as ground to avoid the award.
 

 These conclusions, of course, do not apply to cases, where the award is made under a rule of Court. There, the Court retains a supervising power, and will see that the award was not obtained by unfairness or undue means, when a summary judgment is moved for.
 

 The judgment is affirmed, so far as it is appealed from by the defendants.
 

 The plaintiff insisted, that he was entitled to interest upon the $1000, from the time the defendants refused to abide by the award — if not, from the time he filed his bill
 
 *494
 
 (which bill was filed to compel the specific execution of the contract) — if not, at least from the time his writ issued. His Honor refused to allow
 
 any
 
 interest whatever; and to this the plaintiff excepts, and he also appealed. There is no error. It is clear, the plaintiff had no claim to interest, at all events until after his proceeding in Equity was determined ; for, by his bill, he seeks a specific performance of the contract, and insists, that the defendants had forfeited their right to refuse to abide by the award and pay the $1000 stipulated damage, op account of their laches in refusing to say, definitely, whether they would or would not abide by the award, and pending his proceeding in Equity, he would not have received the $1000.— How can he claim interest for the time, during which he was denying the right of the defendants to pay the money ? See 5 Ire. Eq. 351. But we do not think he is entitled to interest even from the date of his writ. The act of 1786, Rev. Stat. ch. 13, sec. 4, provides, that all bonds, &c., and signed accounts shall bear interest. This act is amended in 1308, Rev. Stat. ch. 31, sec. 90, directing the Clerk, upon judgments by default, to calculate interest without a jury of inquiry. We do not consider this act changes .the law, in regard to interest, in cases, where it was allowed before, which do not come within its provisions.
 

 The question then is, independent of this statute, is interest allowed by law in cases like the one under consideration
 
 1
 

 Interest is allowed, where there has been an express provision to pay interest, or where such promise is
 
 to be implied
 
 from the usage of trade, or other circumstances. 3 B. & C. 349,
 
 Higgins
 
 v.
 
 Sargent.
 
 For instance, where á party agrees to give a note on a contract for goods or otherwise, and fails to give it — he is liable lor interest from the time such note would have arrived at maturity. But for goods sold, money lent, money paid, work and labor done, or on a guarantee, interest is not allowed, un
 
 *495
 
 less there be an express or Implied agreement. This is the rule according to the English cases. Our decisions have extended the rule, and for money lent, or money paid, or had and received, or due on an account stated, the jury ought tobe instructed to allow interest — the premise to pay being implied from the nature of the transaction;
 
 State
 
 v.
 
 Blount,
 
 1 Hay. 4;
 
 Hunt
 
 v.
 
 Jacks,
 
 id. 173; and, in trover and trespass
 
 de bonis asportatis,
 
 the jury may in their discretion allow interest upon the value, from the time of the conversion or seizure, as
 
 apart
 
 of the damages, so as to compel the wrong doer to make full compensation by charging him with the price, as at a
 
 cash sale.
 

 We are not at liberty to relax the rule any further; and to allow interest in this case would carry relaxation to the extreme.
 

 The defendants have not had the money or the property of the plaintiff. It is true, the plaintiff has sustained damage to some extent, but the parties have not left the amount to be ascertained by a jury. They preferred to fix it themselves, and, in the absence of any stipulation for interest, there is no principle, by which the plaintiff has aright to call on the Court to allow interest, or to leave it to the discretion of the jury to do so. For, the amount of damage is fixed; and the jury cannot enter.into the consideration of the question of damage, so as to increase it, unless they were also at liberty to lessen it. x
 

 The judgment must be affirmed, so far-as it is appealed from by the plaintiff.
 

 In this case exceptions, were taken by both plaintiff and defendant — both parties appealed-, and the judgment is affirmed as against both of the appellants. This raises a difficulty as to the costs. To prevent a recurrence of the same difficulty, and to prevent cases from being made too complicated, the Clerks of the Superior Courts will in future, when both parties appeal, make out two transcripts,
 
 *496
 
 so as to make, as there really are, .two cases in this Court. In this case, the Clerk of this Court will state two cases on his docket, and charge costs against the appellant in each case.
 

 Pan CuRiam. Judgment accordingly.