Carl W. MERTZ, Appellant,

v.

J. M. COVINGTON CORP., Appellee.

No. 1129.

Supreme Court of Alaska.

June 12, 1970.

Richard F. Lytle, of Houston & Lytle, Anchorage, for appellant.

Robert C. Erwin and James D. Gilmore, of Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for appellee.

Before BONEY, C. J., and DIMOND, RABINOWITZ and CONNOR, JJ.

CONNOR, Justice.

This is an appeal from the entry of judgment against appellant in an action for damage to his real property. The case arose out of the construction by appellee during September 1967 of a water pipeline along the right-of-way of Miller Loop Road in Kenai. Appellant resided on property adjoining the right-of-way.

Mertz, the appellant, testified that during the excavation of the area in front of his property, the appellee dumped dirt and gravel on his property and destroyed most of the trees—15 or 16—which provided a natural screen and protection from dust and snow. He stated that this destruction occurred in one day without his consent and while he was away at work. He also testified that markers on the corners of his lot were torn out and not replaced. Pictures of the alleged damage taken by Mertz were introduced, although no pictures of the area prior to the excavation were presented. Mertz further testified that he would not allow appellee to remove the excavated earth with tractors because he felt that it would result in further damage to the remaining trees and vegetation.

Appellee's foreman, Ledford, testified that prior to the excavation work in front of appellant's property he contacted appellant. He told appellant of the project and that some soil would get on Mertz' property. He assured Mertz that the property would be cleaned up afterwards and that Covington would place gravel on Mertz' driveway. According to Ledford, Mertz seemed satisfied with Ledford's proposal.

Both Ledford and one Briske testified that the excavation next to appellant's land took place on several days, that they saw appellant at home, and that he did not once object to the appellee's activities until after the completion of the ditch. Ledford testified that appellant's first objection came about one day after he was refused a tap on the waterline. The testimony further revealed that the only damage to the trees was the skinning of the bark of one birch tree. There was further testimony on appellee's behalf indicating that appellee had made several unsuccessful efforts to negotiate for a cleanup after appellant refused to allow appellee to backfill, and that appellee was forced to bring in other earth to fill the excavated ditch.

In prosecuting his claim, appellant prayed for treble damages under AS 09.-

45.730 [1] as well as other equitable relief. Appellee's answer admits the entry onto appellant's land, but sets up the defense of consent—that appellant had consented to the entry for the purpose of temporarily storing the excavated material.

This case and that of another nearby landowner were consolidated and went to trial before a jury. The cases were submitted to the jury with special interrogatories, and general verdicts were returned against appellant and in favor of the other landowner.

At the close of the evidence appellant unsuccessfully moved that the question of trespass be determined as a matter of law and objected to the refusal to give certain requested instructions. After the entry of the verdict appellant moved for a new trial, which was denied.

Appellant raises four claims of error: the trial court erroneously refused to give his requested instructions regarding the statute of frauds; the court incorrectly refused to give a requested instruction on trespass ab initio; the court should have determined, as a matter of law, the issue of trespass, instead of submitting it to the jury; and, finally, the court should have granted appellant a new trial.

Appellee raises on appeal the question of whether the appeal was timely filed.

## TIMELINESS OF APPEAL

Appellee claims that the notice of appeal filed on March 27, 1969, was not within the 30-day time limit of Supreme Court Rule 7(a).[2] Appellee's reasoning is as follows: Since the superior court clerk entered judgment upon the docket on January 29, 1969, appellant had 10 days from that date to file his motion for a new trial under Civil Rule 59(b).[3] Because the motion was served on February 24th, more than 10 days after the entry of judgment by the clerk, the time limit under Supreme Court Rule 7(a) was not tolled, and the notice of appeal was not timely.

Appellant argues that under Civil Rule 58 the time period for serving the motion for a new trial—and consequently for tolling the time period under Rule 7(a)—began to run upon the entry of the written judgment signed by Judge Lewis on February 18, 1969. Civil Rule 58 provides in part:

> "*Entry of Judgment.* Unless the court otherwise directs * * * judgment upon the verdict of a jury shall be entered forthwith by the clerk; but the court shall direct the appropriate judgment to be entered upon a special verdict or upon a general verdict accompanied by answers to interrogatories returned by a jury pursuant to Rule 49."

■ The court submitted interrogatories to the jury. Therefore, Civil Rule 58 required the trial judge to direct the entry of judgment, which was done on February 18, 1969. The motion for a new trial filed on February 24th cannot be attacked for untimely filing. The motion was denied

---

1. "Trespass by cutting or injuring trees or shrubs. A person who cuts down, girdles, or otherwise injures or carries off a tree, timber, or shrub on the land of another person * * * is liable to the owner of that land * * * for treble the amount of damages which may be assessed in a civil action."

2. "When Taken. The time within which an appeal may be taken to the supreme court shall be thirty (30) days from the entry of the judgment appealed from unless a shorter time is provided by law * * *.
   "The running of the time for appeal is terminated by a timely motion made pursuant to any of the rules of civil procedure for the superior court in suits of a civil nature, and the full time for appeal fixed in this subdivision commences to run and is to be computed from the entry of any of the following orders, made upon a timely motion under such rules: * * * or denying a motion for a new trial under Rule 59."

3. "Motion: Time for Serving—Statement of Grounds. A motion for a new trial shall be served no later than 10 days after the entry of the judgment."

March 25, 1969. The notice of appeal was timely filed on March 27, 1969. The case of Vogt v. Winbauer, 376 P.2d 1007 (Alaska 1962), does not support appellee's position. Although the court there held that an untimely filing of a motion for a new trial did not terminate the normal 30-days-from-judgment appeal time, that judgment had been upon a general verdict, not one submitted on interrogatories. Furthermore, a transcript of part of the February 17th proceedings shows that the trial judge indicated that appeal time would run from the entry of the written judgment.

## APPLICABILITY OF THE STATUTE OF FRAUDS

At the close of the evidence appellant submitted to the court the following instructions:

*Instruction No. 2:*

"You are instructed that there can be no enforceable agreement concerning real property made by an agent of either the plaintiff or defendant, unless the authority of the agent is in writing. AS 09.25.010."

*Instruction No. 3A:*

"I instruct you, as a matter of law, that in order for the defendants or their agents to have a right on the land of the plaintiff, there must have been a written memorandum or both the plaintiff and defendant have admitted that the defendant had the right to enter onto and use the land of the plaintiff. AS 09.25.010(6), AS 09.25.-020(4)."

Appellant argues that these instructions should have been given because the alleged agreement whereby appellee was to deposit earth upon appellant's land was an agreement concerning real property under AS 09.25.010(a) (6) and (7) [4] and could not be proved by parol evidence. If this were so, then appellee additionally would not have been able to prove consent by parol because Ledford's authority, as agent, was not in writing and there was no memorandum of the agreement signed by appellee. Since the agreement would not have been enforceable against appellee, it, in turn, should not be enforceable against appellant, under a rule of negative mutuality.

We believe that this argument overlooks the nature of a license for the use of real property.

"A license, it has been said, 'passeth no interest, nor alters or transfers property in anything, but only makes an action lawful which without it, had been unlawful; * * *.'" 3 Tiffany, Real Property, § 829 at 401 (3d ed. 1939).

It is an almost universal rule of law today that a license is not an interest in real property within the terms of the statute of frauds relating to the transfer of interests in real property.[5] The creation of a license requires only express words, or conduct indicating the landowner's consent to the doing of certain acts upon the land.[6] There was ample evidence in the

4. "Statute of Frauds. (a) In the following cases and under the following conditions an agreement, promise, or undertaking is unenforceable unless it or some note or memorandum of it is in writing and subscribed by the party charged or by his agent: * * * (6) an agreement for leasing for a longer period than one year, or for the sale of real property, or of any interest in real property, or to charge or encumber real property; (7) an agreement concerning real property made by an agent of the party sought to be charged unless the authority of the agent is in writing; * * *."

5. Sweeney v. Bird, 293 Mich. 624, 292 N.W. 506 (1940); Hotel Markham, Inc. v. Patterson, 202 Miss. 451, 32 So.2d 255 (1947); Curtis v. La Grande Water Co., 20 Or. 34, 23 P. 808 (1890); Restatement of Property, § 515 (1944); 3 Powell, Real Property, ¶ 428 at 526.63–526.64 (perm. ed. rev. repl. 1967); 1A Thompson, Real Property, § 215 at 188–89 (perm. ed. rev. repl. 1964).

6. Zellers v. State, 134 Cal.App.2d 270, 285 P.2d 962 (1955); Reed Logging Co. v. Marenakos, 31 Wash.2d 32, 196 P.2d 737 (1948); see Hawkins v. Alaska

record from which a jury could reasonably infer that an agreement creating a license had been reached between Ledford and appellant. The record contains no facts which would indicate that a conveyance of the standing timber on the land was intended or that the parties were attempting to create an easement or a lease to last more than one year. The denial of appellant's requested instructions was not error. Howarth v. Pfeifer, 423 P.2d 680 (Alaska 1967).

## THE TRESPASS AB INITIO INSTRUCTION

■ Appellant's requested instruction No. 5 provided:

"You are instructed that if the defendant had a right to enter into the land of the plaintiff, and that after the defendant entered onto the land of the plaintiff, they performed acts or caused damages over and above that agreed upon between the parties, then you shall consider the defendant to be trespasser [sic] 'ab initio' or from the time they first entered onto the land of the plaintiff. Law of Torts Prosser, page 106."

Appellant concedes that the doctrine, even if valid in our law today,[7] is generally applied only to those entering in a governmental capacity or to execute legal process.[8] There was no evidence offered below which would indicate that appellee had asserted that it was acting as a public authority, or by authority of law. Furthermore, it has recently been held that the doctrine does not apply to one who has abused a license. Cartan v. Cruz Construction Co., 89 N.J.Super. 414, 215 A.2d 356 (1965). It was not error to refuse the requested instruction.

## TRESPASS AS A MATTER OF LAW

■ After the close of the evidence appellant unsuccessfully moved that the court find as a matter of law that appellee had wilfully trespassed on appellant's property, on the ground that there was no evidence of consent. The motion was, in essence, a motion for a directed verdict under Civil Rule 50. Where it appears from the record that there is evidence from which fair-minded jurors could reach differing conclusions, the motion is properly denied. Mallonee v. Finch, 413 P.2d 159 (Alaska 1966); Otis Elevator Company v. McLaney, 406 P.2d 7 (Alaska 1965). The evidence is to be viewed in the light most favorable to the party against whom the motion was made. Otis Elevator Company v. McLaney, supra. The summary of the evidence on the question of trespass indicates that there was certainly a substantial conflict as to consent. The trial court was correct in its ruling.

## THE MOTION FOR A NEW TRIAL

■ Appellant's motion for a new trial was based upon the trial court's failure to give the requested instructions regarding the statute of frauds. As we have already indicated, an agreement which creates a license is not a conveyance of a substantial interest in real property. In the absence of a miscarriage of justice, Montgomery Ward v. Thomas, 394 P.2d 774 (Alaska 1964), or the lack of an evidentiary basis for the jury's decision, Mallonee v. Finch, 413 P.2d 159 (Alaska 1966), there has been no abuse of discretion. There was substantial evidence in the record by which the jury could have found that the appellant consented to appellee's entry.

Freight Lines, Inc., 410 P.2d 992 (Alaska 1966); Restatement of Property, § 516, comment e at 3129 (1944); 3 Tiffany, Real Property, § 830 at 405 (3d ed. 1939); 1A Thompson, Real Property, § 222 at 211 (perm. ed. rev. repl. 1964).

7. The doctrine, originating in the Six Carpenters' Case, 8 Co.Rep. 146a, 77 Eng. Rep. 695, 696 (1610), was in effect a rule of procedure allowing an action in tres-

pass rather than case when one who entered land under legal authority subsequently abused the authority by positive wrongful acts. The doctrine has little significance in modern law. Konsiker v. B. Goodman, Ltd., (1928) 1 K.B. 421.

8. Harper and James, the Law of Torts, § 1.21 at 58 (1956); Prosser on Torts, § 25 at 132–34 (3d ed. 1964).

Considering the total lack of evidence that the agreement between the parties was intended to affect a substantial interest in real property, the denial of the motion was quite proper. Bolden v. City of Kodiak, 439 P.2d 796 (Alaska 1968). We find no error.

Affirmed.