WALTER SANDERS, JR., ADMINISTRATOR OF THE ESTATE OF WAVON ATKINSON, DECEASED v. J. FELTON WILKERSON

No. 7311SC549

(Filed 9 January 1974)

1. Easements § 2— profit a prendre — creation by grant — taking of sand and gravel — no license

A *profit a prendre*, which is the right to enter upon the land of another and to take therefrom some part or product thereof, cannot be created orally but can only be created by grant; therefore, defendant who entered plaintiff's intestate's land to remove sand and gravel cannot rely on an oral agreement to take his actions from the realm of trespass and move them into the realm of consent, nor can defendant rely on having a license not revoked, since the right to enter land and take gravel is not the proper subject of a license.

2. Trespass § 8— damages for removal of sand and gravel — good faith of trespasser — no deduction for costs incurred by trespasser

In an action to recover damages resulting from defendant's allegedly wrongful removal of sand and gravel from the property of plaintiff's intestate where the trial court held that the written agreement between the parties providing for such removal was null and void, defendant was not entitled to reimbursement for costs incident to preparing the area for the taking of the sand and gravel, notwithstanding his honest belief that he had title to them.

**3. Trespass § 8— wrongful taking of sand and gravel — measure of damages**

Where defendant under a written agreement entered plaintiff's intestate's land and removed sand and gravel, but the agreement was subsequently held null and void, neither the trespass nor the conversion was intentional; therefore, the measure of damages was the value of the gravel as it lay on the land immediately after is severance from the realty, with no deduction for the value of the defendant's labor in effecting the severance.

**4. Trespass § 8— wrongful removal of sand and gravel — failure of court to award interest — no error**

Since interest is allowed only when expressly given by statute and there is no express provision made for actions of trover or trespass *de bonis asportatis*, in order to compel the wrongdoer to make full compensation to the injured party, the jury may, in their discretion and as damages, allow interest upon the value of the property from the time of its conversion or seizure, but there is no rule which gives interest as a matter of law and right; therefore, the trial court sitting without a jury acted within its discretion in failing to award plaintiff interest from the date of the wrongful taking of sand and gravel from his intestate's property.

Judge BALEY dissenting.

APPEAL by plaintiff and defendant from *Canaday, Judge,* 26 February 1973 Session of Superior Court held in JOHNSTON County.

This action was brought to recover damages resulting from defendant's allegedly wrongfully removing sand and gravel from the property of plaintiff's intestate.

Plaintiff's complaint alleged that defendant wished to remove sand and gravel from his land, the sand and gravel being necessary in the construction of certain oil bulk tanks in the immediate vicinity. Wavon Atkinson (Atkinson) advised defendant that there was a mortgage on the property. Defendant suggested that made no difference, but he would want a written agreement with respect to the exclusive right to dig on the 10-to-15-acre portion designated; that if any cropland was used an equal amount of land would be cleared by defendant. A written agreement was prepared by defendant. Atkinson alleged his signature was obtained by fraud; that the agreement purported to be an absolute conveyance in fee of Atkinson's property with defendant having right to dig for sand and gravel without limitation; that it failed to provide for royalties to Atkinson. Atkinson further alleged that since September 1966 defendant had, personally and through named other persons, entered on

Sanders v. Wilkerson

his lands and removed large quantities of dirt, sand and gravel without accounting to Atkinson therefor; that dirt, sand and gravel had been removed from cropland and an equal amount had not been cleared. Atkinson alleged that the purported contract was without consideration and acquired fraudulently, was null and void and should be cancelled of record. He further alleged that because of "the continued trespassing upon his land by the defendant and the waste committed thereon," he was entitled to a restraining order, actual damages of at least $28,000, and punitive damages of at least $50,000.

Defendant answered, admitting Atkinson's ownership of the land, admitting the contract, denying it was obtained by fraud and without consideration, averring that the recorded contract was a valid agreement, denying any trespass or waste and entitlement to damages. As an affirmative defense, defendant pled estoppel. By way of counterclaim, he asked for $401 allegedly due him by Atkinson for sand and gravel sold by Atkinson from the lands.

By interrogatories answered by defendant it was established that defendant considered the agreement a mining lease and royalty agreement; that he did not consider himself obligated regularly to remove sand and gravel from the lands; that he contended he had paid Atkinson $4103.22; that approximately 45,000 yards of sand and gravel had been removed; that other people, naming them, had been upon Atkinson's land under authorization of defendant and removed sand and gravel and had paid defendant therefor; that Atkinson was to receive $0.10 per cubic yard for the material as it lay in the pit; that defendant had received a total of $8,667.53 for the sand and gravel removed from Atkinson's land.

Atkinson moved for summary judgment upon the ground that the written agreement was null and void and asking that the court declare the written agreement "to be null and void as a matter of law and that the court submit to the jury an issue as to the amount of damages, both actual and punitive, to which plaintiff is entitled." Judge Bailey entered an order finding that no consideration was given for the execution of the instrument, that it was vague and indefinite as to time of performance and as to the area involved. The order further provided that the agreement "is null and void, and that therefore plaintiff is entitled to the relief prayed for in his Motion for Summary Judgment." Judge Bailey ordered the agreement stricken from the

record. This Court affirmed Judge Bailey's order. *Atkinson v. Wilkerson*, 10 N.C. App. 643, 179 S.E. 2d 872 (1971). Thereafter, the plaintiff having died, Walter Sanders, Jr., as administrator of the estate of Wavon Atkinson, was substituted as party plaintiff.

After the opinion of this Court was certified to the Superior Court, plaintiff filed a motion for summary judgment for liquidated damages in the amount of $4,484.31 and for judgment in favor of plaintiff on defendant's counterclaim. In support of his motion, plaintiff urged that the written agreement had been held to be null and void; that in answer to interrogatories defendant had admitted the total sales of $8,667.53 and that he had paid Atkinson $4,183.22; that based upon defendant's admission, the value of plaintiff's land was reduced by at least $8,667.53 and defendant was entitled to a credit of $4,183.22; that since defendant's counterclaim was based on an agreement held to be null and void, plaintiff was entitled to judgment on the counterclaim.

Defendant answered the motion averring that even though the agreement was null and void, Atkinson understood its terms and consented over the period of time to the entry of defendant and his agents on Atkinson's lands; that defendant constructed a haul road over Atkinson's lands and had incurred other expenses by cutting a ditch, draining a pond, and cutting trees; that issues of fact remained for determination.

Defendant subsequently moved for judgment on the pleadings for that the complaint failed to state a claim upon which relief could be granted because no allegations therein established right to damages.

Plaintiff moved to amend the complaint to insert "per acre" after the words and figures $2,000 in alleging the value per acre of the land for sand and gravel purposes. This amendment was allowed.

The trial court, on 6 March 1973, entered an order in which he stated that the written agreement had been declared null and void on motion of defendant for summary judgment and the "only issue remaining in this action is the amount of damages that the plaintiff is entitled to recover of the defendant."

The court found the rule of damage to be as set forth in *Jones v. McBee*, 222 N.C. 152; awarded plaintiff damages in the

amount of $4,484.31 with interest from the date of the judgment until paid; denied defendant's motion for dismissal and for judgment on the pleadings; and allowed plaintiff's motion for summary judgment on defendant's counterclaim.

Both plaintiff and defendant appealed.

*L. Austin Stevens for plaintiff appellant and plaintiff appellee.*

*James A. Wellons, Jr., and Wallace Ashley, Jr., for defendant appellant and defendant appellee.*

MORRIS, Judge.

[1]  Defendant argues in his brief that even though the written agreement was declared null and void, there was an oral agreement and plaintiff consented and agreed for defendant to go upon his lands and take the sand and gravel.

We said in *Builders Supplies Co. v. Gainey,* 14 N.C. App. 678, 681, 189 S.E. 2d 657 (1972) :

> "While commercial gravel belongs to the mineral kingdom in that it is inorganic and formed by nature alone, it is not regarded as a mineral under the mining laws of North Carolina. *Lillington Stone Co. v. Maxwell,* 203 N.C. 151, 165 S.E. 351 (1932). (But see G.S. 74-49 (6), effective 11 June 1971)."

This action arose from activities in 1966 through 1969, and the action was instituted in 1969. In *Builders Supplies Co. v. Gainey,* 282 N.C. 261, 192 S.E. 2d 449 (1972), Justice Lake defined a *profit a prendre* as "the right to enter upon the land of another and to take therefrom some part or product thereof." See also Webster, Real Estate Law in North Carolina, § 312. A *profit a prendre* can only be created by grant. It cannot be effectively created orally. *Council v. Sanderlin,* 183 N.C. 253, 111 S.E. 365, 32 A.L.R. 1527 (1922) ; *Builders Supplies Co. v. Gainey, supra.* Defendant, therefore, cannot rely on an oral agreement to take his actions from the realm of trespass and move them into the realm of consent. Nor can defendant rely on having a license not revoked. See Thompson, Real Property, § 135. The right to enter land and take gravel is not the proper subject of a license. Thompson, *supra,* § 222.

Since defendant's counterclaim was based on the void contract, the court properly allowed plaintiff's motion for a directed verdict on the counterclaim.

[2]  Defendant further urges that he is entitled to reimbursement for costs incident to preparing the area for the taking of the sand and gravel. We believe this argument is answered by the following statement of Justice Denny (later C.J.) in *Jones v. McBee,* 222 N.C. 152, 22 S.E. 2d 226 (1942):

> "This Court has held that where an action is brought to recover for damages for logs cut and removed by one in the honest belief on the part of the trespasser that he had title to them, the measure of damages is the value of the logs in the woods from which they were taken, together with the amount of injury incident to removal. However, notwithstanding the good faith of the party removing the logs, he may not be allowed compensation for converting the trees into personal property. *Wall v. Holloman,* 156 N.C., 275, 72 S.E., 369; *Gaskins v. Davis,* 115 N.C., 85, 20 S.E., 188."

[3]  We come now to plaintiff's contention that the court erred in failing to allow interest from the time of the taking. Plaintiff relies on language in *Jones v. McBee, supra:*

> " 'Where neither the trespass nor the conversion is wilful or intentional, the measure of damages is the value of the mineral as it lay in the mine immediately after its severance from the realty, with no deduction for the value of the defendant's labor in effecting the severance. *The measure of damages for the conversion of ore by a purchaser from a trespasser has been held to be the value of the ore sold, together with a sum equal to legal interest thereon from the time of conversion, less the reasonable and proper cost of raising it from the mine after it was broken, and hauling from the mine to the purchaser's place of business.*' "
> (Emphasis added.) Id. at 154.

Apparently, plaintiff relies on that portion which is italicized. We agree that application of correct principles of law to the facts of this case results in denominating the actions of defendant as a conversion of the sand and gravel. The distinction between the italicized portion above and the case before us is that the conversion is not by a purchaser from a trespasser, but con-

version by the trespasser himself. We think the first sentence of the quoted portion is applicable in this case.

[4]    In *Patapsco v. Magee*, 86 N.C. 350, 355-356 (1882), Justice Ruffin (later C.J.), speaking to the question of assessing interest in damage awards, said:

> "The rule in this state is, that interest, *as interest,* is allowed only when expressly given by statute, or by the express or implied agreement of the parties. *Devereux v. Burgwin,* 33 N.C., 490; *Lewis v. Rountree,* 79 N.C., 122. The only statute upon the subject is that contained in Rev. Code, ch. 31, sec. 90, which provides that all sums of money *due by contract of any kind whatsoever,* excepting such as may be due on penal bonds, shall bear interest, etc., but there is no provision made for actions of *trover* or trespass *de bonis asportatis.* In such cases, in order to compel the wrong-doer to make full compensation to the injured party, the jury may, in their discretion, and as damages, allow interest upon the value of the property from the time of its conversion or seizure, and it has been usual for them to do so. But there is no rule which gives it as a matter of law and right, and it was error, therefore, in his Honor to have thus added to the damages as assessed by the jury."

See also *Lance v. Butler,* 135 N.C. 419, 47 S.E. 488 (1904). Our research has disclosed nothing which would change the rule set out by Justice Ruffin.

We are aware of the decision in *Dean v. Mattox,* 250 N.C. 246, 108 S.E. 2d 541 (1959), but we do not think it changes the rule set out in *Patapsco v. Magee, supra.* In *Dean v. Mattox,* the jury returned a verdict of $2,250 damages, and the trial judge added in the judgment rendered "with interest from July 29, 1957," the date set by plaintiff in his complaint for the running of interest. Defendant had conveyed to plaintiff for $12,000 consideration certain timber on a designated tract of land. Plaintiff went on the land and cut timber and sold some to a lumber company. Plaintiff later learned that the land from which this timber was cut belonged to Duke Power. Plaintiff refunded the money and sued for $2,250, the alleged value of the timber he paid for but did not get. Justice Bobbitt (now C.J.), in discussing the defendant's contention that the court erred in adding interest to the jury's verdict, said:

> "Appellant cites no authority in support of his contention that the court erred in rendering judgment for $2,250.00

---

Sanders v. Wilkerson

---

*with interest from July 29, 1957.* Relevant to his general contention to this effect, it is noted that an action to recover for money had and received, under the doctrine of unjust enrichment, is an action on implied contract. Decisions in other jurisdictions differ as to whether, and if so as of what date, interest is allowable in such action. See 58 C.J.S., Money Received § 33 (b), where the author states that 'the better view seems to be that whether interest shall be recovered must depend on the justice and equity of the case.'

Without undertaking presently to adopt a rule of general application, we think the allowance of interest from July 29, 1957, the date plaintiff paid $2,250.00 to Rocky River Lumber Company, was proper under the circumstances of this case. The only reasonable conclusion to be drawn from the testimony of both plaintiff and defendant is that prior to July 29, 1957, defendant was fully advised that demand had been made on plaintiff for the $2,250.00 and that plaintiff was insisting that defendant provide the $2,250.00 to meet such demand." Id. at 251.

In the case before us, there was no jury verdict, because there was no trial. The court was entering judgment upon a motion for summary judgment. In his discretion, he could have awarded interest from the date of taking. He did not do so. Plaintiff has shown no abuse of discretion.

Affirmed.

Judge CAMPBELL concurs.

Judge BALEY dissents.

Judge BALEY dissenting.

In *Atkinson v. Wilkerson*, 10 N.C. App. 643, 179 S.E. 2d 872 (1971), this Court held the written agreement between the defendant and Atkinson for removal of sand and gravel from Atkinson's land to be invalid. The majority now holds that the oral agreement for removal of sand and gravel admitted by both parties is unenforceable, and defendant is liable to plaintiff for the full amount he received from the sale of the sand and gravel, leaving him no profit and no compensation for the time, labor,

Sanders v. Wilkerson

and funds which he expended in removing and selling it. In my view, the applicable law does not require this inequitable result.

Both the defendant and Atkinson understood that the defendant had permission to be on the land and to remove sand and gravel; yet, because the written agreement was declared invalid, defendant is being treated as if he had stolen the sand and gravel. The record discloses that over a period of more than three years from 1966 to 1969 Atkinson had knowingly permitted the defendant to remove sand and gravel from his land and had received eleven separate payments for such materials in the total amount of $4,183.22. The entire sales price received by defendant for the materials removed was $8,667.53.

In my judgment the defendant in reality was not a trespasser but a licensee. Even though the agreement between defendant and Atkinson did not create a *profit a prendre,* it did create a license. A license can be created orally and is not subject to the statute of frauds. Restatement of Property, § 515 (1944) ; Webster, Real Estate Law in North Carolina, § 311; *see* Mordecai, Law Lectures 463-64, 835. When an attempt to create an easement or *profit a prendre* is ineffective because of defects in the written document or because there is no written document, a license is created. *Whitaker v. Cawthorne,* 14 N.C. 389 (defective writing) ; *Mertz v. J. M. Covington Corp.,* 470 P. 2d 532 (Alas. 1970) (no writing) ; *Towles v. Hodges,* 235 Miss. 258, 108 So. 2d 884 (1959) (no writing) ; 3 Powell, Real Property, § 429; Restatement of Property, § 514; Webster, *supra,* § 311. A license is defined as "a permission or waiver permitting the licensee to do acts upon the land which would otherwise be a trespass." Webster, *supra,* § 310. It differs from an easement or *profit a prendre* primarily in that it is freely revocable at the will of the licensor. *Hutchins v. Durham,* 118 N.C. 457, 24 S.E. 723; *R. R. v. R. R.,* 104 N.C. 658, 10 S.E. 659; 3 Powell, *supra,* § 428; Restatement of Property, § 519; Webster, *supra,* § 312. The difference is not significant in this case because the license was not revoked during the period involved.

Since defendant had a license from Atkinson allowing him to take sand and gravel from Atkinson's land, he was not a trespasser and did not wrongfully convert the materials to his use. After removing the sand and gravel, he sold it and paid Atkinson part of the proceeds as the oral contract between the parties required. Whether the $4,183.22 paid to Atkinson was as large

a payment as the contract required, and whether Atkinson's acceptance of the $4,183.22 estopped him to demand a larger sum, are issues as to which there may be conflict. They must be decided at trial rather than by summary judgment.

My vote is to remand for trial.